Good morning, Your Honors. My name is Nikki Warren. I represent the proper appellant in this case, Advanced America Cash Centers, Missouri. I don't understand this, why the case doesn't have the correct parties. Yes, Your Honor. What do you mean you represent the proper appellant? I mean, do you represent the named defendant or not? I do not. The named defendant in the case, Cash Advance America, Inc., is an unaffiliated entity to the two entities. Why does this court have jurisdiction if no party has filed a notice of appeal? I think, Your Honor, the question here is whether or not the entities at issue in the actual case should have been substituted. Everybody agrees . . . Why is that a reviewable order? I thought the order that you are attempting to appeal is the order denying a motion to compel arbitration, not the order denying the motion to substitute. Correct, Your Honor. The order that is being appealed from was filed on behalf of the proper defendant in the case, the entity that I represent. And the district court took it as a given in the order that that was the entity that was making the motion and that was the subject of the lawsuit, even though in name, in caption, the entity was improperly named. So, in essence, the district court order applies to my client, and my client, therefore, appealed the order as the entity that was adversely affected by the order. But your client is not a party to the case, as I understand it. My client . . . There was a motion to substitute that would have made your client a party or made another party the defendant, and the judge just left it the way it is. That's correct, Your Honor. But the order that the district court that we are appealing from applies to my client for the terms of the order itself. I don't know what you mean by it applies to it. It says that you cannot arbitrate or that the plaintiff is not required to arbitrate something. The order, Your Honor, says that the plaintiff is not allowed to arbitrate, that my client may not invoke arbitration against the plaintiff because the scope of the arbitration provision is not broad enough to cover the issue in dispute. So, it actually reaches the merits and applies the order to my client. Therefore, if this court were to lack jurisdiction, my client would have an order against it by the district court, which would be unappealable due to the nature of the way the district court interpreted and applied the order. Maybe. I'm not sure I understand why it's against your client if your client's not a party in the district court. Your Honor . . . Or you're trying to litigate something as a non-party. Your Honor, my client did answer as the appropriate party in the district court. Essentially, my client was served, but the wrong name was on the caption. So, in order to proceed to the merits of the case and believing that this would get sorted out before that time, that plaintiff would actually substitute the right party. I understand you believed it, but it hasn't been sorted out. Yes, Your Honor. To the extent that this court believes that it lacks jurisdiction, I think the correct order would be to order that the district court also lacks jurisdiction and, therefore, the order cannot apply to my client and that the issue would need to be sorted out once the correct parties are sorted out. Because otherwise, my client has an adverse order from which it cannot appeal. And so, our understanding was that the way the district court treated the order, because the order was applied as against my client, there was an adverse effect and that gives us standing to appeal. All right. I understand your point. Go ahead. Thank you, Your Honor. I do understand this is a procedurally complicated case, but I think . . . Well, it's just unnecessarily so. I mean, why . . . Anyway, go ahead. Go ahead with your argument. I understand. The core of the case, though, is about the scope of the arbitration agreement at issue here. And it is clear under this court's precedent that the scope of the arbitration agreement is one that would require the dispute at issue to be sent to arbitration. Much like the district court in the Palm decision, the district court here stated the correct standard, but applied the opposite. In fact, I believe that a case that was recently issued by this court, since briefing has been decided, shows why this decision, the district court's decision, was wrong. In the Anderson v. Hansen decision at 47 F. 4th 711, aside from Your Honor's very persuasive dissent in the case, the majority itself actually shows that the scope of the arbitration clause here is so broad as to require arbitration in these facts. Which case are you referring to? Anderson v. Hansen, 47 F. 4th 711. That is an opinion that this Court issued since the decision. And in that case, the Court relied on the Doe opinion, the plaintiff's site from the Eleventh Circuit. If we look at the Doe opinion, what we see is that the Eleventh Circuit said that the arbitration provision in that case was too narrow to apply to claims of sexual assault when the arbitration provision was related to an underlying or was contained within an underlying employment agreement. But the reasoning of the Court and the reasoning that the majority adopted was that, the reasoning of the Eleventh Circuit was that if they wanted a broader provision, they could have said any and all disputes and controversies whatsoever. The Eleventh Circuit explicitly said that that type of broad language is the type of language that would cover all types of disputes between the parties, and then that would be sufficient to bring any dispute within the realm of the arbitration provision. And that's exactly the language that we have in this case. Do you say this Anderson case that you are leading with was filed after the briefs were filed in this case? Yes, Your Honor. Did you file a letter notifying the Court that you thought it was an important case? No, Your Honor. No, I didn't think so. Usually, if it's going to be your lead case, that would be helpful. That way, we could read it and be prepared. So you might go back and file a 28, what's called a 28-J. 28-J. You're familiar with that? Okay. Yes, Your Honor. And you weren't familiar with it? No, I apologize. Let me ask you this about the arbitration agreement. It says, it has this opt-out provision. Correct, Your Honor. And then it says, this agreement contains all the terms regarding your loan. And I assume you agree that the dispute resolution is one of the terms regarding the loan? Dispute resolution is one of the terms regarding the loan, but I think it's also part of the the consent to be contacted regarding not only the loan, but the company's, quote, services, which is broader than just the loan. And I believe that the dispute resolution portion itself has extremely broad language, which would not be limited by anything within the opt-out provision. But the borrower can send in a letter and opt out of the dispute resolution provision, correct? They can. And then that would mean that the arbitration requirement does not apply if the borrower opted out? Correct. Now, what if the borrower has, like this borrower, more than one loan? And say the borrower sent in the opt-out letter on the second loan, is it your position that nonetheless the first agreement requires for all time arbitration of any dispute with the company? Even if there was an opt-out on the second? Your Honor, I think that would depend on the nature of the claim being brought and whether or not it related specifically to the loan or to other portions of the agreement, including the consent. But we don't have that instance here because there is no record of Ms. Stanton ever opting out of any of the, of ever providing opt-out under any of the three agreements that she signed. Yes, I understand that. But what I am trying to understand is the scope of these provisions. And as I understood your position, you are saying that once a person enters into one of these agreements, it is unlimited in time and that any dispute with the company for all time is subject to arbitration? I think it would depend, again, based on this Circuit's case law, on the nature of the dispute. So here, because what we have is a dispute that relates to a portion of the agreement about consent, then it is possible that if you opted out of one but not the other two to the consent within the agreement. And therefore, any dispute that involves interpretation of that consent, which is what we have with the TCPA claim, would potentially require arbitration for that type of claim. Do you mean you can never opt out of a claim involving consent? Your Honor, I believe that this would be a question for the arbitrator because the question is going to be the interpretation of the consent. So the consent that is given here is unlimited. So any time consent is provided, then the question becomes, is there any limitation to that consent? And here, there is not. Yes, but I was asking about the dispute, anyway, the opt-out from the dispute resolution. I thought you were saying that whether the person opted out depends on what the claim is. But the dispute resolution provision just says, if you have any dispute with us, period. It doesn't say regarding alone. That's your whole argument. Anyway, go ahead with your argument. I'm not, I don't want to push that any further. Go ahead. No, that's okay. Understood. Like I said, I think it's an interesting but unnecessary question to reach because the facts don't require the court to reach that question here. One of the issues that plaintiffs raised was the termination of the agreements. And I just to the Cook v. CompuCredit decision 543 F3D 460 that I think explains as well as the cases cited in the briefing that an underlying credit agreement or an agreement such as this, even where terminated, there is a presumption, as we stated in our briefs, that the arbitration provisions within those types of agreement are valid post-expiration of the agreement. So any expiration here, if it even existed due to the one never paid claim, would not prevent my client from enforcing the arbitration agreement. I see that I have a little bit of time left, and I will reserve that time unless Your Honors have more questions. Very well. You may. Thank you. Mr. Rockman, we will hear from you. May it please the Court? My name is Jesse Rockman. I represent the appellee and the plaintiff in the underlying case. Judge Collett and I share your confusion about this theme party issue, and it certainly unnecessarily muddies the water. It is your complaint. It is our complaint, and we misidentified or had a misnomer naming. Why didn't you file an amended complaint with the proper party? We had not filed an amended complaint with the proper party because it wasn't until later in discovery and in the midst of the briefing that we recognized that the true name of the parent company was Pursue Financial. At that point, you weren't allowed to file an amended complaint? No, I think that the amended complaint is the process that probably needs to be fettered out in the district court, to be honest, before the motion to compel was even raised at the trial court. That way, as the master of the complaint, the plaintiff could name the parent party, as it said in the record below, as what it intended to name. But what we have here, it is interesting because counsel is up here saying they do not represent the named defendant, yet their waiver of service is entered on behalf of the defendant as named. Not the defendant as named, but improperly named, as you see in their appellate briefing. We look no further than the notice of appeal. The signature block of the notice of appeal says that they are the counsel for the named defendant and the Missouri subsidiary, as they are separate and distinct entities. So I think it is a little disingenuous for them to come up here and suggest they are not representing the named defendant when they did a waiver of service on behalf of the named defendant. They moved to compel on behalf of the named defendant as named. They filed a notice of appeal with this court saying they represent the named defendant. And there is no contractual agreement between the named defendant and the plaintiff. Well, then why shouldn't your case just be dismissed? You sued somebody with whom, who wasn't involved in the allegations. I mean, you are just wasting the court's time. I agree. I think what should happen is a motion to amend, even a dismissal for a misnomer. This court's precedent generally suggests that there is no prejudice to the other party because they have had notice and there is no exploitation of evidence that leave should be granted to correct that misnomer. But on to the merits of the case, which, you know. Counsel, one more question on that point. The named defendant is Cash Advanced Sinners, Inc. Is that even an entity? Is that a corporate entity somewhere? It's an inactive corporate entity based on the record, what they've searched of the Secretary of State records in other states. It's an inactive corporate entity. It certainly shares a very, the naming is very common to it and the parent company. The parent company is Advance America Cash Advanced Sinners, Inc. What Cash Advanced Sinners, Inc., what state is it incorporated? I think it was incorporated in North Carolina, if I remember the record correctly, Your Honor. It is now inactive or that has been forfeited. Okay. So this isn't a situation where just everyone rocked along assuming that this was the correct name. Everybody knew that this was a corporate entity that had nothing to do with this, with the facts of this case. You're correct, Your Honor. I mean, everybody did kind of rock along under the name Cash Advanced Sinners, Inc. Unfortunately so, because now it complicates everything. Other than the district court's order was careful to, you know, in the opening it said it was addressing Defendant Cash Advanced Sinners, Inc. And then later on when it wanted to address their arguments about the Missouri subsidiary, which is Advance America Cash Sinners of Missouri, it specifically did that on page 2 of its order. It said it entered into arbitration agreements with Advance America Cash Advanced Sinners of Missouri, Inc. and then defined them as Cash Advanced Missouri instead of Defendant. It repeatedly referred to Defendant throughout the remainder of the order. When it wanted to discuss the Missouri subsidiary, it did so. So what you have here is, I think, a motion to compel arbitration that was brought by Cash Advanced Sinners, Inc., and it was denied as to Cash Advanced Sinners, Inc. If Advance America Cash Sinners of Missouri, which is the Missouri subsidiary, gets substituted in on that motion to substitute, or if, you know, Advance America Cash Advanced Sinners, Inc., which is the parent company, and it's admittedly confusing because the names overlap so much. I'll just refer to the parent and the sub. You know, as the master of the complaint, you know, on the motion to substitute, we ask that the parent be substituted in. They ask that the sub be substituted in. I think that's what needs to probably happen on remand is some resolution of that, and then the district court needs to address whatever motions that the entity being substituted in or an amendment corrects would bring at that time. But as we sit here today on the record before this court, it was properly denied as to the name Defendant. I also want to address, you know, Judge Collin, I want to pick up a little bit on, you know, if we get to kind of the meat of the arbitration agreement, that their argument, their main argument is that it covers every dispute in the world in perpetuity. This Court in Zeder said that an interpretation like that would be patently absurd, and I think that picks up on reasoning we see in other courts, like the Seventh Circuit where Judge Posner said, you know, giving it such an interpretation would allow, you know, the party to that agreement to compel arbitration in a situation where an Advance America Cash Centers, Inc. employee runs over my plaintiff 20 years later. No. But the counselor has to touch on matters covered by the agreement, does it not, under our case law? I don't think it touches on matters covered by the agreement. No, but that's the standard. What? But that is the standard, is it not? The standard is that it touches on matters. I agree. I think. So it's not limitless. It has limits. Yes. I agree it has limits. It has limits. One, it has a limit to the parties that can invoke it. You know, one, it says that this is limited to the parties. Unlike many other agreements, they cite the May v. Direct TV case out of the Fourth Circuit, Your Honor, which has a much broader party definition to its scope, right? That one covered AT&T and its affiliates. This one has very narrow party-specific language, and it must arise out of the agreement. And this one doesn't touch matters, you know, that arise out of the agreement because this claim would exist even without the underlying agreement. It would exist without the underlying loans because it was admitted that the call was by Rodriguez, and that call was going to happen regardless of anything that happened before. So the agreement is completely unrelated to the calls. So it can't be said to touch on matters upon it if the agreement's existence doesn't matter to support the claim. I also want to say that there is some, you know, not only does the Eighth Circuit precedent suggest that it must touch upon the agreement, I want to pick up on Judge Culliton's, you know, aptly noted that the arbitration opt-out clause suggests that the agreement has limits. You know, first of all, unlike most of the cases they cite that are employment contracts or employment services that have an uncertain duration and an uncertain amount of action, you know, they could go into perpetuity. This is a loan that has one payment scheduled on it, and that one payment is to come in 14 days. You know, first of all, the duration of these agreements is one item. And the Tucker v. Vincent case out of the Eastern District of Missouri that discusses this Eighth Circuit precedent in the CW case, or the CD case, talked about how the Eighth Circuit has purchase agreements and employment agreements for that very basis. One that there is one act that is what's contemplated by the contract versus employment ones where you have this ongoing relationship. But then to what Judge Culliton was saying in this dispute resolution, that confirms that this was not designed to cover stuff in perpetuity because it says that your opt-out, you have to send a separate opt-out each time you borrow from them. And that opt-out pertains to that sole agreement. Right? If this, if a single, if the opt-out is confined to the loan, you know, you're opting out a dispute resolution and it's confined to a single loan, it only makes sense to review that dispute resolution as confined to the loans, coupled with the narrow party-specific language in the dispute resolution, the Eighth Circuit precedent, that it must touch matters upon the contract. Now, the defendant keeps trying to parlay their consent provision into saying that that is an essential element of the claim. We cite cases in our briefing that discuss how consent is really an affirmative defense and it is not an essential part of the claim. And it is also, you know, that consent provision is limited by the same narrow party-specific language. You know, the named defendant, you cannot read that to provide consent to the named defendant, which creates, I understand, complicating issues given the whole party history here. But, you know, there's no named defendant that you would have any consent issues with. And the consent provision talks about services and loans. The defendant concedes they were not calling our client about her loan because they were calling Sergio Rodriguez about his loan, trying to collect the debt on Sergio Rodriguez's loan. But what they say is, well, you know, our services is broad and that we're trying to – we were contacting her about our services. But that is not a plausible interpretation of that because it would render meaningless the second provision, which is we can call you about our services or the loans. Well, they were calling Sergio Rodriguez about the loans, to collect the debt on the loans. And so they were not calling, you know, about services. The record shows they weren't calling about that. They were calling about the loans and they weren't even calling about her loan. So if we get by the fact that the defendant's not a party to the arbitration agreement and we can get by the fact that the dispute resolution provision is narrow and patent-specific and does not include either the named defendant or the parent company, you know, and you can get by the fact that, you know, it has to relate to the agreement, you're left with that part where it has to relate to the agreement and I think that the opt-out language and the claims asserted here show that it does not. If I don't have any further questions, then I'll end with one final thing, which is, you know, there's an arbitration agreement here, but the named defendant and the parent company, which the plaintiff attended a suit, are not a party to it and they don't meet the limited circumstances that allow a non-signatory to enforce arbitration against a signatory. Thank you. All right. Thank you for your argument. Ms. Waugh, we'll hear you in rebuttal. Yes, Your Honor. I just want to point out to the Court that the issue of who are the correct parties to the arbitration agreement and who may enforce the arbitration agreement is an entirely separate question from the scope of the arbitration agreement, as this Court said in the CD Partners cited in our briefs. I want to be clear that our position is not necessarily that this arbitration provision is unbounded. It could be applied in any instance, in any claim, across all scope of time. It was simply to point out that the language itself is broad enough for that interpretation and that under the Court's precedent, which does require a nexus to the agreement or that the claim touch on the agreement, that is the case here. The plaintiff essentially asks this Court to say that as long as the claim does not arise out of the agreement, that that means the agreement cannot be enforced, but here it certainly touches on it and nothing in the agreement limits it to claims arising out of the agreement. How does it touch on the agreement? It touches on the agreement because the consent issue is a primary issue in the case and an issue that the arbitrator will need to decide in order to reach the merits of the case. And the plaintiff is asking you to reach the merits of that in order to determine the scope of arbitration issue, which is inappropriate. All right. Thank you for your argument. Thank you, Your Honors. The case is submitted and the Court will file a decision in due course. Thank you to both counsel. Thank you. Counsel. Counsel are excused.